## IN THE UNITED STATES DISTRICT COURT FOR SOUTHERN DISTRICT OF MISSISSIPPI EASTERN DIVISION

LINDA JEFFERSON HOLMES,
INDIVIDUALLY AND ON BEHALF OF
KENTRON S. HOLMES,
A VA RATED, 100% TOTALLY AND PERMANENTLY
SERVICE-CONNECTED, DISABLED AMERICAN VETERAN     **PLAINTIFFS**

V.        **CIVIL ACTION NO.: 2:18-cv-179-KS-MTP**

THE UNITED STATES, ITS U.S. SECRETARY
OF VETERANS AFFAIRS, HON. ROBERT WILKE,
DULY APPOINT HEAD OF THE DEPT. OF
VETERANS AFFAIRS, ITS G.V. "SONNY"
MONTGOMERY V.A.
MEDICAL CENTER, ITS CAREGIVER SUPPORT PROGRAM,
AND ITS LOUISVILLE FIDUCIARY HUB        **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This cause came before the Court on Defendants' Motion to Dismiss [17]. Plaintiffs have responded [21], and Defendants filed a reply [22]. The Defendants move to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that the Court lacks subject matter jurisdiction. The Court acknowledges from the outset that complaints filed by *pro se* plaintiffs are held to a less stringent standard than complaints filed by lawyers, and documents filed by *pro se* litigants are "to be liberally construed . . . ." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*). This Court has given Plaintiffs' Complaint and response to the instant motion a thoughtful reading, but finds, nevertheless, in light of the relevant legal authority, Plaintiffs are unable to support federal jurisdiction. Consequently, for the reasons that follow, the Court grants Defendant's Motion to Dismiss.

# I. BACKGROUND[1]

Plaintiff Linda Holmes ("Ms. Holmes") brings this suit on her own behalf and on behalf of her son, Kentron Holmes ("Veteran Holmes") (collectively, "Plaintiffs"), a disabled veteran for whom she is the full-time caregiver and for whom she has a power of attorney. *See* [2] at I. A[2]; [8-12].[3] Defendants are the United States ("DVA"); the U.S. Secretary of Veterans Affairs, Robert Wilkie; the VA Medical Center located in Jackson, Mississippi ("VAMC"); the Caregiver Support Program ("CSP"), and the Louisville Fiduciary Hub ("LFH"). [2] at I. B, C.

In 2002 Veterans Holmes was diagnosed with a service-connected brain disease that presented as paranoid schizophrenia. [2] at III A. In 2003, Veteran Holmes first attempted suicide while suffering from hallucinations. *Id.* In 2006, he made his second attempt by cutting his own throat. *Id.* To prevent her son from successfully committing suicide, Ms. Holmes resigned from her job to provide full-time, in-home care for Veteran Holmes in September 2006. *Id.* By 2011 regardless of the medications prescribed, Veteran Holmes had suffered for over a decade from auditory and visual hallucinations, as well as other mental and social disabilities, including chronic paranoia. *Id.*

After five years of caring for Veteran Holmes without steady or substantial income, Ms. Holmes was accepted into the Caregivers Support Program in May 2011[4] and awarded Tier-3 monthly stipend compensation through the VA Medical Center in Jackson for acting as Veteran

---

[1] Before setting forth the facts of this case, the Court wishes to commend Ms. Holmes for her tireless dedication to her son and the sedulous efforts she has given to get him the care that he, as well as many of our nation's veterans, so desperately need and deserve.

[2] Plaintiff's Complaint contains sections bearing Roman numerals and with lettered subsections. As such, any citation to the Complaint will be to the particular section/subsection and not to a page number.

[3] [8-12] comes from a set of exhibits at Doc. No. [8] filed separately and subsequent to the Complaint, but because they are specifically referenced in the Complaint as exhibits to the Complaint, they will be considered part of the Complaint. *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.").

[4] This program was a new caregiver benefits program provided by VA, arising under title I of the Caregivers and Veterans Omnibus Health Services Act of 2010, which was signed into law on May 5, 2010, of which the "purpose is to provide certain medical, travel, training, and financial benefits to caregivers of certain veterans and servicemembers who were seriously injured in the line of duty on or after September 11, 2001." https://www.federalregister.gov/documents/2011/05/05/2011-10962/caregivers-program#h-10.

Holmes' full-time caregiver. [2] at IV. A; [8-2][5]. Along with her initial acceptance letter, Ms.

Holmes received a document titled, "YOUR RIGHTS TO APPEAL THE TIER LEVEL

(CLINICAL) DECISION," which states, in part, as follows:

> You may appeal to the VA Medical Center (VAMC) where the Veteran is receiving care by explaining why you disagree with the decision. If you are not satisfied with the VAMC Director's decision you may request to have your decision reviewed by the Veterans Integrated Service Network (VISN) Director or his/her designee.
> ***
> A clinical appeal is your formal request to have the VAMC Director or designee reviews [sic] your dispute.
> ***
> If you are not satisfied with the local VA facility's decision you can elect to appeal your decision to the VISN Director.
> ***
> CAN I GET A HEARING WITH THE BOARD OF VETERANS APPEAL?
> No. The clinical appeals process does not allow for you or your representative to appeal a clinical decision to the Board of Veterans Appeal. You should follow the clinical appeals process as outlined in this letter. The clinical decision is final and cannot be appealed to a higher authority.

[8-2] (hereinafter referred to as "Notice of Rights").

Plaintiffs claim that although Veteran Holmes still required the same level of in-home

caregiving services, by 2015, the culture at the VAMC in Jackson had changed and the

coordinators in the program began to make petty verbal assessments regarding Veteran Holmes'

need for care. [2] at IV.B. Plaintiffs also claim that over the course of a year leading up to

October 2015, Jackson CSP coordinators and the clinical review team intentionally concocted

information, plotted against Plaintiffs, and falsified Veteran Holmes' medical records so as to

"intentionally and maliciously" misattribute his mental illness and incompetency, which then led

to a deliberate under-assessment Veteran Holmes' physical condition. [2] at IV.B. As a

consequence of these deliberate acts, on October 16, 2015, Veteran Holmes' level of in-home

---

[5] [8-2] is an acceptance letter is dated August 24, 2011, but any discrepancy in the date of acceptance into the Program is irrelevant for purposes of determining Defendants' motion.

health care was lowered from a Tier-3 to a Tier-1 level of care,[6] which Plaintiffs claim was an intentional "effort [by the VA] to deliberately place Veteran Holmes in danger of mental destabilization in an effort to induce endangerment to him and society at large." [2] at IV.B; [8-4]. Ms. Holmes claims she was strategically targeted to be eliminated as her son's full-time in-home caregiver. *Id.*

In the October 16, 2015 letter notifying Plaintiffs' of the reduction in benefits, the process for appealing stated: "You may appeal this decision in writing to the G.V. (Sonny) Montgomery VA Director or his/her designee, within 90 days of the date of this notice. A clinical appeal is your formal written request with substantiating documentation to support your dispute." [8-4] at p. 1. Ms. Holmes had asked for an updated Notice of Rights letter, but the follow up from the VMAC indicated that information regarding her right to appeal had been noted in the October 16, 2016 letter. [8-4] at p. 11. Plaintiffs also received a notice from the VA Caregiver Support Program office in Denver, Colorado, which included a Notice of Rights that was identical to the one Plaintiffs received in 2011, giving her 180 days to submit a disagreement. [8-4] at pp. 14-15.

In November 2015, Ms. Holmes filed an appeal of the VA's decision to lower the Tier level, which appeal was denied on December 15, 2015. [2] at IV. C.; [8-3] at pp. 11-26; [8-4] at p. 17. In the December 2015 notification letter, Ms. Holmes was advised:

> You may elect to have this appeal sent to the Veterans' Integrated Service Network (VISN) 16 Director. A clinical appeal is your formal request to have the VISN Director or designee review your dispute. Your disagreement regarding your clinical eligibility denial must be submitted in writing within 10 days of the receipt of this notice.

[8-4] at p. 17. Plaintiffs claim that the decisionmakers implemented their own flawed appeal criteria, manipulating, modifying, and implementing it as they went along. [2] at IV.C. Plaintiffs

---

[6] Plaintiffs allege that the decision was made on October 15, 2016, but the documents attached to the Complaint appear to establish that October 16, 2016 was the date the decision was made. It is the date on the Notice letter [8-4] at p. 1. Also, in her email to Ms. Husain at the VA, Ms. Holmes indicates that she was notified verbally on October 16, 2016 that the tier level had been lowered. [8-4] at p. 4.

allege the modified appellate criteria was strategically designed by the CSP coordinators to be disadvantageous for Plaintiffs, and that in an effort to humiliate Ms. Holmes, the December denial was mailed so that Ms. Holmes would receive the denial on Christmas Eve. *Id.*

Ms. Holmes then appealed the denial of her first appeal, as directed, to the VISN Director on December 30, 2015. [2] at IV. D; [8-3] at pp. 1-7. On January 28, 2016, Ms. Holmes was notified that there needed to be further medical evaluation to determine the proper tier but for the meantime she was reinstated back into the CSP at Tier Level 3 and the corresponding monthly stipend for Tier Level 3 would resume. [8-5] at p. 1. She was also provided back-payment to October 16, 2015. *Id.*[7] Following the reinstatement, the administrative appeal process was officially closed in May 2016. [2] at IV. D.

"Because of continued intent to commit actionable harm through and including 08 March 2018," Ms. Holmes filed a "Claim for Damage, Injury, or Death" with the VAMC on April 6, 2018. [2] at IV. E; [8-14]. On May 3, 2018, the Office of General Counsel for the Department of Veterans Affairs notified Ms. Holmes that her claim was denied. [20-1].

Plaintiffs claim that even though they suffered actionable harm, which was the reduction in the tier level in October 2015, the Defendants' CSP coordinators at the VAMC had enacted a conspiracy to limit/eliminate Veteran Holmes' in-home care by "manipulating and falsifying his

---

[7] The January 28, 2016 notification came from the Department of Veterans Affairs office in Ridgeland, MS. However, Ms. Holmes also received a notice from the VA Caregivers Support Program office in Denver, CO dated February 19, 2016, which notice contained another Notice of Rights. [8-5] at p. 4. This document is almost identical to the one she received in her initial acceptance letter dated August 24, 2011. *See* [8-2]. Ms. Holmes complains that the Notice of Rights "had been changed again to reflect the continued illegal appellate actions of the Defendants' local VAMC Jackson CSP-Coordinators." [2] at IV. D. The first Notice of Rights noted, "Your disagreement with the tier level must be submitted to the VAMC within 180 days of the notice," but the second stated, "Please contact your Caregiver Support Coordinator or Patient Advocate for local VA Medical Center policy, procedures and timelines for appeals." This change is irrelevant both because Ms. Holmes never filed another appeal and because it does not affect resolution of the motion.

healthcare records as far back as March 27, 2015." [2] at V.A.[8] Thus, Plaintiffs contend that the decision to lower the benefits in October 2015 was based on fraudulent medical data, which included, but was not limited to, the deliberate misrepresentation of the health of Veteran Holmes and the minimizing the full-time daily living needs that Ms. Holmes provided to her son from 2006-2015. [2] at V.A. [8-6; 8-7; 8-8]. Plaintiffs claim that the "lowering of Veteran Holmes' caregiver tier from a Tier [3] to a Tier [1] exposed Veteran Holmes to debilitation, destabilization, becoming a danger to himself and others in society." [2] at V.A. Plaintiffs allege that the VAMC's CSP coordinators "went to great lengths to defraud Veteran Holmes out of his in-home caregiver services," claiming that the appellate process was "riddled with flaws and penetrated with illegal actions of misrepresentations." [2] at V.B. Finally, Plaintiffs go on to claim that, despite the appeals process being finalized in May 2016, the falsification of medical records has continued. [2] at V.D.[9] Plaintiffs claim that not only has this falsification of records continued, but also "a strategic corrupt pattern of conduct including, but not limited to: corruption in the medical decision-making aimed at defrauding Veteran Holmes out of his full-time in-home caregiver services." [2] at V.E.

Plaintiffs brings this suit under the Federal Tort Claims Act. ("FTCA"). [2] at II.A. They assert a variety of claims and damages, which can be summarized as follows: That the VAMC coordinators, clinical review and medical providers and therapists conspired to fraudulently remove Plaintiffs' caregiver benefits via the fabrication of medical records both before and after the Tier level was lowered. [2] at V. A, B; VI. A. Second, that the Defendants' actions and

---

[8] Section V of the Complaint appears to allege various facts so as to support a defense of "equitable tolling," presumably because Ms. Holmes was told in the letter denying her claim to the VA that her tort claims were barred for not having been presented within two years after the claim accrued. [20-1]. Defendants have not raised a statute of limitations defense to dismiss the Complaint; therefore, the counter-defense of equitable tolling is not at issue here.
[9] Plaintiffs refer to composite Exhibit [8-7], which contains Ms. Holmes' numbered statements, refuting each attached medical assessment of Veteran Holmes by various neuropsychologists and therapists.

indifference intentionally and negligently inflicted emotional distress on Plaintiffs. [2] VI. B. Third, Plaintiffs seek an "Order of Enforcement" compelling the Defendants to cease and desist their "retaliation, resentment, issuance of threats, defamation of Caregiver Holmes' character, refusal to accept transparency by Caregiver Holmes on behalf of Veteran Holmes, and the adversarial indifference to the transportation safety standards that are adhered to by Caregiver Holmes for the support and safety of Veteran Holmes." [2] at p. 28.[10]

## II. DISCUSSION

Plaintiffs Linda Holmes and Kentron Holmes have filed this action under the Federal Tort Claims Act ("FTCA") complaining about various intentional and malicious acts and behaviors of those administering the CSP at the VAMC surrounding the temporary reduction in their caregiver benefits. The Defendants filed a motion to dismiss, alleging that this Court does not have subject matter jurisdiction to hear claims, and that even if jurisdiction existed, the Defendants have not waived sovereign immunity. [18] at pp. 2-3. Defendants claim that while Plaintiffs clothe the Complaint in tort, Plaintiffs' issue is really a denial of benefits, a decision over which this Court does not have jurisdiction due to the exclusive jurisdiction of the Veterans Judicial Review Act ("VJRA"). Defendants also argue that even if there was a possibility of this Court's having jurisdiction, the Defendants are not subject thereto because the United States has not waived sovereign immunity for any actions in Plaintiffs' Complaint that sound in tort. The Court will address each argument below.

### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(1) requires dismissal for lack of subject matter jurisdiction if the court lacks statutory or constitutional power to adjudicate the case. *See Home*

---

[10] Plaintiffs initially included in their Complaint a fiduciary claim against the Defendants' Louisville Fiduciary Hub, but now concede that the claim should be filed separately from this tort claim. [20] at p. 15.

*Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims. *See Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). The Fifth Circuit recognizes a distinction between a "facial attack" and a "factual attack" upon a complaint's subject matter jurisdiction. *Rodriguez v. Tex. Comm'n on the Arts*, 992 F. Supp. 876, 878 (N.D. Tex. 1998). "A facial attack requires the court merely to decide if the plaintiff has correctly alleged a basis for subject matter jurisdiction" by examining the allegations in the complaint, which are presumed to be true. *Id.* (citation omitted). Regardless of the attack, the burden of proof is on the party asserting jurisdiction. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

Here, Defendants' Motion makes a facial attack on the Court's subject matter jurisdiction. Defendant did not submit evidence in support of its assertion that the Court lacks subject matter jurisdiction over Plaintiffs' claims, and Defendants argue that Plaintiffs' jurisdictional claim fails on legal, not factual, grounds. Thus, all of Plaintiffs' factual allegations will be accepted as true for the purpose of determining whether the Court has jurisdiction over their claims.

### B. Analysis

#### 1. It is uncertain whether the VJRA bars jurisdiction over Plaintiffs' claims.

Defendants contend there is no jurisdiction in this Court because Plaintiffs' claims relate to a determination of benefits and the Veterans Judicial Review Act ("VJRA") gives the Court of Veteran Appeals exclusive jurisdiction. In response, Plaintiffs argue that throughout their Complaint it is evident that Plaintiff is not appealing any benefits decision, as those appeals are complete. Rather, they are seeking damages for injuries inflicted by the alleged tortious acts of

the Defendants' employees during the scope of their employment and that the claim has nothing to with a determination of benefits. [20] at p. 2.

Defendants rely exclusively on the case of *King v. United States*, 901 F. Supp. 2d 781 (S.D. Miss. 2012) as authority for the dismissal in this case. However, as the Plaintiffs point out, the *King* case involved different facts, and most importantly, involved the denial of different benefits. The benefits at issue here were not veteran's disability benefits, as in *King*, but rather caregiver benefits under Title 1 of the Caregivers and Veterans Omnibus Health Services Act of 2010, which was only signed into law in May 2010. *See* Fed. Reg. Vol. 76, No. 87 at 26148. Defendants claim Plaintiffs' only avenue is the Court of Veteran Appeals. [18] at p. 4. However, Defendants have cited no authority, other than *King*, which the Court finds inapplicable, to establish that the resolution of benefits decisions under the Caregivers and Veterans Omnibus Health Services Act of 2010 fall within the exclusive jurisdiction of the VJRA. Without additional authority, and based on its own research and the facts of this case, the Court is not certain that the VJRA applies here, even if the Plaintiffs were complaining only about a denial of benefits.

The Veteran's Judicial Review Act was enacted in 1988 to create an opportunity for veterans to challenge VA benefits decision, but also to assign exclusive jurisdiction over their claims to a centralized system comprised of the Board of Veteran's Appeals, a newly established Court of Veterans Appeals (now named the Court of Appeals for Veterans Claims, and the Federal Circuit), and the Federal Circuit. *Walton v. Sec'y Veterans Admin.*, 187 F. Supp. 3d 1317, 1325-26 (N.D. Ala. 2016) (quoting *Beamon v. Brown*, 125 F.3d 965, 972 (6th Cir. 1997). Section 511 of Title 38 provides that the Secretary of Veterans Affairs "shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans." *Id.* at 1326

(quoting 38 U.S.C. § 511(a)). In the VJRA, "Congress conferred on the Veterans Court 'exclusive jurisdiction' to review decisions of the Board of Veterans Appeals, 38 U.S.C. § 7252(a), and its powers include the authority to decide any question of law relating to benefits proceedings . . . ." *Veterans for Common Sense v. Shinseki*, 678 F.3d 1013, 1021-22 (9th Cir. 2012).

The documentation that the VA sent to Plaintiffs refers to the process of assessing caregiver benefits as a "clinical decision," and based on the statements in the Notices of Rights provided to Plaintiffs, it appears that jurisdiction may not fall under the VJRA. Each of the Notice of Rights specifically stated, "The clinical appeals process does not allow for you or your representative to appeal a clinical decision to the Board of Veterans Appeal. You should follow the clinical appeals process as outlined in this letter. The clinical decision is final and cannot be appealed to a higher authority." If these types of benefit decisions are not reviewable by the Board of Veterans Appeals, then Plaintiffs would not become a part of that centralized system for challenging benefits decisions for which the VJRA was set up. Thus, it would appear that these particular caregiver benefit determinations may indeed fall outside the scope of the VJRA.

Be that as it may, the Court need not reach a definitive resolution of the issue in this case because the Court finds, even if the VJRA does not have exclusive jurisdiction over Plaintiffs' claims, the claims are barred by sovereign immunity.

## 2. Sovereign immunity bars Plaintiffs' claims.

The Defendants also contend that the Court lacks subject matter jurisdiction because they have sovereign immunity from the claims in this case. Plaintiffs contend that their claims under the FTCA are proper because they are seeking damages caused by the negligent acts of federal government employees acting within the scope of their federal employment as authorized by the

FTCA and that the May 3, 2018 letter denying their tort claims provided them authorization to sue. [21] at p. 2; [20] at pp. 7-8

The United States and its agencies have sovereign immunity from suit unless Congress has specifically consented. *Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 287 (1983); *United States. v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."). The plaintiff bears the burden of showing that Congress waived sovereign immunity. *Freeman v. United States*, 556 F.3d 326, 334 (5th Cir. 2009). Congress's waiver must be "unequivocally expressed in statutory text . . . and will not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996) (internal citations omitted).

Based on this general law, to the extent Plaintiff argues that the May 3, 2018 letter from the Office of General Counsel for the Department of Veterans Affairs, notifying Ms. Holmes that her claim was denied [20-1], is an implied waiver, such argument is not tenable. Again, there must be an explicit statutory waiver. Thus, whatever may be implied from the letter, even if it were an "authorization by Defendants to file suit against Defendants" or a "consent to suit" as Plaintiffs claim,[11] it was clearly not an explicit statutory waiver of any sovereign immunity defense the United States may have.

Defendants correctly state that under certain listed exceptions in the FTCA, the United States [12] has not waived sovereign immunity for tort claims related to abuse of process, misrepresentation, liable, deceit or slander. *See* 28 U.S.C. § 2680(h). Defendants go on to argue

---

[11] *See* [20] at p. 7.
[12] Defendants are correct that under the FTCA, the only proper party is the United States. *Walters v. Smith*, 409 Fed. App'x 782, 783–84 (5th Cir. 2011) (citing *Smith v. United States*, 561 F.3d 1090, 1099 (10th Cir.2009) and quoting "The United States is the only proper defendant in an FTCA action."). Plaintiff appears to acknowledge such when describing why other Defendants were named. [20] at p. 7.

briefly that because Plaintiffs allege claims based on allegations of misrepresentation, libel, abuse of process, and deceit, they do not fall within the waiver and are thus barred. [18] at p. 4. The Defendants provide no analysis of the allegations of the claims, but upon close review, the Court does not find that any claims arise from libel or abuse of process. However, a close look at whether the claims arise from deceit and/or misrepresentation is warranted. If they do, then sovereign immunity has not been waived, and this Court has no jurisdiction. In order to analyze and resolve the issue, we look solely to the claims as presented in the Complaint.

The Court first notes that are instances in both the Complaint, as well as in their response and memorandum in opposition to the Motion to Dismiss, where Plaintiffs describe the Defendants' actions as "negligence" or "negligent," such as using the words "negligent infliction of emotional distress" in the Complaint. [2] at VI.B. However, Plaintiffs cannot evade the jurisdictional limitations of Section 2680(h) by artful pleading that attempts to assign another label to what are actually claims arising from an exception to the waiver. *See, e.g., Garcia v. United States*, 776 F.2d 116, 118 (5th Cir. 1985) (explaining assault and battery exception cannot be circumvented by labeling his claim as one for "negligence").

The reason the Court finds that claims are not founded in negligence is because the Complaint is replete with references to intentional fraudulent conduct by the CSP coordinators and the clinical review team. For example, in the Complaint the Plaintiff allege: "after almost a year of intentionally concocting, plotting, and falsifying Veteran Holmes' medical records, on October 15, 2015, Defendants VAMC Jackson's CSP-Coordinators and Clinical Review Team intentionally and maliciously implemented the misattribution . . . leading to a deliberate under-assessment of Veteran Holmes' physical condition." [2] at III.B. These actions resulted in the lowering of the tier level, which was an "intentional effort to deliberately place Veteran Holmes in danger . . . ." [2] at VI.B. "Defendants went to great lengths to defraud Veteran Holmes out of

his in-home caregiver services." [2] at IV. B. "Subsequent to the appeal process . . . the falsification of medical records by the CSP-Coordinators and their clinical therapists continued . . . ." [2] at V.D. Based on these and other allegations in the Complaint, the Court finds they do not arise from simple negligence, but even if the acts were intentional, the question is do they arise from either deceit or misrepresentation.

Deceit is defined as "the act of intentionally giving a false impression." BLACK'S LAW DICTIONARY 413, 670 (7th ed. 1999). "Black's Law Dictionary defines 'misrepresentation' as '[t]he act of making a false or misleading assertion about something, usu[ally] with the intent to deceive.'" *NPR Investments, L.L.C. ex rel. Roach v. United States*, 740 F.3d 998, 1007 (5th Cir. 2014) (citing BLACK'S LAW DICTIONARY 1091 (9th ed. 2009)). The Supreme Court has held that the "misrepresentation" exception to the waiver of sovereign immunity applies to both willful and negligent misrepresentations. *United States v. Neustadt,* 366 U.S. 696, 698 (1961).

After a number of full reviews of the Complaint, the Court finds that the gravamen of Plaintiffs' Complaint is that the temporary reduction in benefits exposed Plaintiffs to danger and that the reduction in benefits was the result of a conspiracy to harm the Plaintiffs by the intentional and malicious falsifying of medical records and mischaracterizing Veteran Holmes' disability so as to under-assess his condition. [2] at V.A. [8-6; 8-7; 8-8]. This conclusion is also supported by the following allegations:

> On September 24, 2015, a month before the wrongful act, the falsification of medical records by the CSP neuropsychologist performing the quarterly visit/assessment with Caregiver Holmes and Veteran Holmes continued falsification of medical records at the request of the Defendants' CSP-Coordinators. Thus, on October15, 2015, the secretive and unnamed CSP Clinical Review Team made a corrupted clinical decision based upon fraudulent medical data . . . .

[2] at V.A. The essential acts giving rise to all of Plaintiffs' claims are the falsifying of the medical records. Thus, the claims based on such conduct clearly arise from deceit and

misrepresentation.[13] Lest there be any question, the Court's finding is even further supported by a later allegation in the Complaint, which states:

> The Clinical Review Team's actions of lowering/eliminating the caregiver services was based upon medical record falsehoods, manipulation of medical record data, fabrications, and terminological inexactitudes resulting in the concealment of the truth regarding Veteran Holmes' actual health level/condition. Said medical record lies, falsehoods, fabrications and inexactitudes caused Veteran Holmes to become ineligible for the higher tier level of full-time in-home services in the program.

[2] at V.B.  Clearly, these claims arise from deceit and misrepresentation.

In addition, there are other secondary complaints, namely that the Defendants manipulated and modified the appellate process, which was modifications were designed to be disadvantageous to Plaintiffs. [2] at IV.C.  In this claim, the Plaintiffs appear to take issue with the appellate process being represented a different way each time she was notified. In August 2011, the Notice of Rights stated that Plaintiffs had 180 days to appeal. In the October 2015 letter, Plaintiffs were given 90 days to appeal, when the CSP letter from Denver, which was sent a few days later, indicated 180 days.  In the December 2015 letter, denying Plaintiffs' first appeal, she was told she had 10 days to submit any disagreement with the findings.  Plaintiffs themselves allege the appeals process was  "riddled with flaws and penetrated with illegal actions of misrepresentations . . ." [2] at V.B.  This claim, too, arises from misrepresentation.

Finally, Plaintiffs complain about the members of the CSP Clinical Review Team being kept a secret. [2] at V.A, B. This conduct, too, is indicative of deceit on the part of the Defendants.

---

[13]  Plaintiffs argue in their response that the conduct amounts to criminal action. [20] at p. 14. While the Court empathizes with Plaintiffs' feelings about the egregious nature of the alleged conduct, categorizing the acts as criminal does not assist in the Court's analysis. "[F]ederal courts have repeatedly held that violations of criminal statutes do not give rise to a private right of action." *Williams v. Cintas Corp.*, No. 3–07–CV–0561–M, 2007 WL 1295802 at *2 (N.D.Tex. Apr.10, 2007), and the nature of "crimes" cited by Plaintiffs only further confirms the deceitful nature of the conduct.

## III. CONCLUSION

The Fifth Circuit has held explicitly that "causes of action distinct from those excepted under § 2680(h) are nevertheless deemed to be barred when the underlying governmental conduct 'essential' to the plaintiff's claim can fairly be read to 'arise out of' conduct that would establish an excepted cause of action." *Atorie Air, Inc. v. FAA*, 942 F.2d 954, 958 (5th Cir.1991). Based on the foregoing analysis, the Court finds that all of the alleged conduct of the Defendants' employees that underlie and are essential to the Plaintiffs' claims arises out of conduct that constitutes deceit or misrepresentation, which is conduct specifically enumerated in Section 2680(h). Therefore, there has been no waiver of sovereign immunity, and the Plaintiffs' claims must be dismissed.

THEREFORE, it is hereby ORDERED that the Defendants' Motion to Dismiss is GRANTED. Plaintiffs' claims are hereby dismissed with prejudice. Pursuant to Federal Rule of Civil Procedure 58, a separate judgment will be entered.

SO ORDERED AND ADJUDGED this 1st day of October 2019.


/s/ Keith Starrett _____
KEITH STARRETT
UNITED STATES DISTRICT JUDGE


Copy to: Linda Jefferson Holmes, pro se
      45 Robey Jefferson Road
      Jayess, Mississippi 39641